**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GARY VARNER<br>544 Chestnut Street<br>Nelsonville, OH 45769<br><br>Plaintiff,<br><br>v.<br><br>APG MEDIA OF OHIO, LLC<br>d/b/a The Athens Messenger<br>9300 Johnson Road<br>Athens, OH 45701<br><br>**Serve also:**<br>c/o CT Corporation System,<br>Statutory Agent<br>4400 Easton Commons Way<br>Columbus, OH 43219<br><br>Defendant. | ) | CASE NO.<br><br>JUDGE:<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED HEREIN** |

Plaintiff Gary Varner, by and through undersigned counsel, as his Complaint against the Defendant, states and avers the following:

**PARTIES**

1. Varner is a resident of the city of Nelsonville, Athens County, state of Ohio.
2. Defendant APG Media of Ohio, LLC d/b/a The Athens Messenger ("APG"), is a foreign limited liability company conducting business throughout the state of Ohio, with its principal place of business located at 9300 Johnson Road, Athens, OH 45701.
3. At all times referenced herein, APG was Varner's employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and/or Ohio R.C. §4112.01(A)(2).

**JURISDICTION & VENUE**

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Varner is alleging a Federal Law Claim under Title VII.

5. This Court has supplemental jurisdiction over Varner's state law claims pursuant to 28 U.S.C. § 1367, as Varner's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

7. Within 180 days of the conduct alleged below, Varner dual filed a Charge of Discrimination with the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission ("EEOC", Charge No. 532-2018-00120) against APG ("EEOC Charge").

8. On or about May 11, 2018, the EEOC issued and mailed a Notice of Right to Sue to Varner regarding the EEOC Charge.

9. Varner received his Notice of Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

10. Varner has filed this Complaint on or before the 90-day deadline set forth in his Notice of Right to Sue.

11. Varner has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).



## FACTS

12. Varner is a former employee of APG.

13. Varner worked for APG as a Carrier, pursuant to the terms of an Independent Contractor Newspaper Delivery Agreement ("Agreement"), from 2001, until APG unlawfully terminated Varner's Agreement and employment on June 13, 2017.

14. Varner's most recent Agreement was for a 12-month period from August 4, 2016 to August 4, 2017. The Agreement is attached as Plaintiff's Exhibit 2.

15. Varner had an exemplary employment record with no history of discipline in the 16 years he worked for APG. Indeed, Varner regularly received positive reviews and feedback from his supervisors and customers through the years, never missed his route, and consistently delivered his newspapers on-time.

16. Despite Varner's previously positive employment record, Varner's supervisors and co-workers constantly harassed Varner due to his sexuality (homosexual), and APG started conveniently finding and/or creating a basis to terminate Varner after he reported this harassment to the company.

17. Upon information and belief, Varner is the only homosexual male Carrier employed by APG.

18. For years, Varner has endured harassment, disparate treatment, and a hostile work environment due to his sexuality.

19. The harassment has come not only from Varner's co-workers (*e.g.*, Mandy Wendell, Amber Partlow, Roger Partlow), but also from his supervisors, including Craig Dickelman (Circulation Manager) and Penny Lendway (District Manager).



20. Throughout the years, Varner repeatedly reported the harassment outlined above to his supervisors and to Human Resources. Not only did APG do nothing about the discrimination and harassment, but some of Varner's own supervisors perpetuated the harassment.

21. This harassment has included such conduct as slurs to Varner's face, calling him "faggot" and other derogatory names, to a general refusal by any co-workers or supervisors to help Varner with his route if he was sick or injured. In fact, Lendway would often cover routes for other APG employees, such as Wendell or Partlow, but refused to ever cover for Varner if he needed help.

22. The harassment and hostility towards Varner came to a head on the evening of June 9, 2017, when Wendell, Partlow, and Wendell's sister Mindy (LNU), began attacking and screaming at Varner and his daughter at APG's loading docks.

23. At one point, while Varner was trying to move his car so he could leave, Mindy screamed to Varner, "your faggot ass can walk the newspapers there". During the altercation, Varner defended himself and his daughter, but got away as quickly as he could.

24. The next morning, June 10, 2017, Dickelman and Lendway met with Varner and terminated his Agreement and employment, without explanation or cause.

25. None of the heterosexual employees involved in the previous night's altercation were disciplined in any way, even though they were the aggressors.

26. After years of abuse and harassment, Varner defended himself against verbal and physical attacks from co-workers, and instead of disciplining those involved in attacking Varner based on his sexuality, APG used it as its opportunity to terminate Varner's Agreement and employment with APG.



27. Following Varner's termination, Dickelman sent Varner a letter dated June 13, 2017, in which Dickelman stated, "Pursuant to your signed agreement…we are exercising our termination rights. Effective in 30 days, July 12, 2017, your independent contractor newspaper delivery agreement is terminated."

28. As with the June 10 meeting, Dickelman provided no explanation or cause for Varner's termination. Then, shortly after receiving this letter, Dickelman called Varner and informed him that Varner would not be working for the next 30 days, but instead, his termination was effective immediately.

29. Paragraph 15 of the Agreement reads, in relevant part,

   A. Either party may terminate this contract for any reason and without cause by providing thirty (30) days written notice to the opposite party.

   B. Either party may terminate this contract for cause immediately. "Cause" shall include, but not be limited to, material breach of this contract.

30. Here, APG provided no "cause" for Varner's termination. Thus, per the Agreement, Varner was entitled to 30 days' written notice prior to termination; although Dickelman sent Varner a letter on June 13, 2017 purporting to give Varner 30 days' notice, Dickelman called Varner shortly thereafter and advised that Varner's termination was effective immediately.

31. Thus, not only did APG discriminate against Varner as described above, but also it terminated his employment in violation of the Agreement.

32. The termination of Varner's Agreement and employment with APG was an adverse employment action by APG.

33. Varner was discriminated against for being homosexual.



34. Varner's Agreement and employment with APG was actually terminated due to his sexual orientation, and/or in retaliation for making complaints of discrimination and harassment in the workplace.

35. There was a causal connection between Varner's protected classes (sex/gender) and complaints and APG's adverse actions taken against Varner.

36. APG did not proffer any legitimate non-discriminatory reason for terminating Varner's Agreement and employment with APG.

37. APG's purported reason for terminating Varner's Agreement and employment with APG was pretext for sex/gender discrimination, and/or retaliation for making complaints of discrimination and harassment in the workplace.

38. As a result of being treated disparately on the basis of his sex/gender, and being terminated from APG, Varner has suffered severe emotional distress, anxiety, and depression. He has had and continues to accrue damages based thereupon.

**COUNT I: GENDER/SEX DISCRIMINATION IN VIOLATION OF TITLE VII**

39. Varner restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

40. Varner is a member of a statutorily protected class based on his sex/gender and sexual orientation under Title VII.

41. During his employment with APG, Varner was able to successfully perform the essential functions of his job.

42. APG treated Varner differently than other similarly situated employees based on his sex/gender and sexual orientation.



43. APG discriminated against Varner on the basis of his sex/gender and sexual orientation by, among other ways, terminating his Agreement and employment with APG.

44. APG's discrimination against Varner based on his sex/gender and sexual orientation violates Title VII.

45. APG violated Title VII when they terminated Varner's Agreement and employment with APG based on his sex/gender and sexual orientation.

46. Upon information and belief, following the termination of Varner's Agreement and employment with APG, Defendant replaced him with someone outside his protected class.

47. As a direct and proximate result of APG's conduct, Varner suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT II: GENDER/SEX DISCRIMINATION IN VIOLATION OF OHIO REVISED CODE § 4112.02(A), ET SEQ.**

48. Varner restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

49. Varner is a member of a statutorily protected class based on her sex/gender and sexual orientation under R.C. § 4112.02.

50. During his employment with APG, Varner was able to successfully perform the essential functions of his job.

51. APG treated Varner differently than other similarly situated employees based on his sex/gender and sexual orientation.

52. APG discriminated against Varner on the basis of his sex/gender and sexual orientation by, among other ways, terminating his Agreement and employment with APG.

53. APG's discrimination against Varner based on his sex/gender and sexual orientation violates R.C. § 4112.02.



54. APG violated R.C. § 4112.02 when they terminated Varner's Agreement and employment with APG based on his sex/gender and sexual orientation.

55. Upon information and belief, following the termination of Varner's Agreement and employment with APG, APG replaced him with someone outside his protected class.

56. As a direct and proximate result of APG's conduct, Varner suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT III: HOSTILE WORK ENVIRONMENT ON THE BASIS OF GENDER/SEX DISCRIMINATION**

57. Varner restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

58. During his employment with APG, Varner was subjected to offensive and harassing conduct by his coworkers, supervisors, and managers based on his sex/gender and sexual orientation.

59. APG knew or should have known of the harassing conduct against Varner.

60. APG condoned, tolerated and ratified this harassing conduct.

61. This harassing conduct was severe and/or pervasive.

62. This harassing conduct was offensive to Varner.

63. This harassing conduct interfered with Varner's ability to perform his job duties.

64. APG's offensive and harassing conduct created a hostile and/or abusive work environment for Varner.

65. APG's offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Varner.

66. As a direct and proximate result of APG's conduct, Varner suffered and will continue to suffer damages.



## COUNT IV: RETALIATION

67. Varner restates each and every prior paragraph of this complaint, as if it were fully restated herein.

68. As a result of APG's conduct described above, Varner complained to his supervisors, managers, and Human Resources about the discrimination, harassment, and disparate treatment he was experiencing.

69. Subsequent to Varner's reporting of discrimination, harassment, and disparate treatment, APG terminated Varner's Agreement and employment with APG.

70. APG's actions were retaliatory in nature based on Varner's opposition to the unlawful discriminatory and disparate treatment.

71. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

72. As a direct and proximate result of APG's retaliatory discrimination against and termination of Varner's Agreement and employment with APG, he suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT V: BREACH OF CONTRACT

73. Varner restates each and every prior paragraph of this complaint, as if it were fully restated herein.

74. At the time of his termination from APG, Varner's most recent Agreement was for a 12-month period from August 4, 2016 to August 4, 2017.



75. Varner successfully complied with the terms of the Agreement, performed all the conditions precedent and promises required by them therein, and was entitled to performance and/or payment on APG's part.

76. APG breached the Agreement by, among other things, terminating the Agreement without providing Varner 30 days' prior written notice; although Dickelman sent Varner a letter on June 13, 2017 purporting to give Varner 30 days' notice, Dickelman called Varner shortly thereafter and advised that Varner's termination was effective immediately.

77. As a direct and proximate result of said material breaches of the Agreement, Varner has been damaged and APG is liable to Varner in an amount to be determined at trial, but in excess of $25,000, as well as interest at the rate provided by law, the cost of the within action and reasonable legal fees as prescribed by Ohio Revised Code §5321.05.

**COUNT VI: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

78. Varner restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

79. As set forth above, APG targeted, harassed, bullied, embarrassed, and ultimately discharged Varner based on his sexual orientation, and/or in retaliation for complaining of the discrimination and harassment in the workplace. Indeed, APG targeted the only homosexual male carrier at APG, called him derogatory and offensive names, physically bullied him, and then terminated his Agreement and employment without cause or warning when he complained of the treatment.

80. APG intended to cause Varner emotional distress, or knew that their acts or omissions would result in serious emotional distress to Varner.



81. APG's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.

82. As a direct and proximate result of APG's acts and omissions as set forth above, Varner has suffered mental anguish of such a serious nature that no reasonable person could be expected to endure it.

83. As a direct and proximate result of APG's conduct and the resulting emotional distress, Varner has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**DEMAND FOR RELIEF**

WHEREFORE, Varner demands from APG the following:

a) Issue a permanent injunction:

   i. Requiring APG to abolish discrimination, harassment, and retaliation;

   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

   iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

   iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and



v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) An award against APG for compensatory and monetary damages to compensate Varner for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

c) An award of punitive damages against APG in an amount in excess of $25,000;

d) An award of reasonable attorneys' fees and non-taxable costs for Varner's claims as allowable under law;

e) An award of the taxable costs of this action; and

f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/Matthew G. Bruce*_______
Matthew Bruce (0083769)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Blvd., Suite 200
Beachwood, OH 44122
Phone: (513) 883-1147
Fax: (216) 291-5744
Email: matthew.bruce@spitzlawfirm.com

*Attorney for Plaintiff Gary Varner*



**JURY DEMAND**

Plaintiff Gary Varner demands a trial by jury by the maximum number of jurors permitted.

*/s/Matthew G. Bruce*_____
Matthew Bruce (0083769)

